UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X Index No.: 1:18-cv-05678
CHRISTIANN SOTO,

Plaintiff,

**COMPLAINT**

-against-

Plaintiff Demands
A Trial By Jury

CDL (NEW YORK) L.L.C., individually and d/b/a
"MILLENNIUM BROADWAY HOTEL,"

Defendant.
-----------------------------------------------------------------X

Plaintiff, by and through her attorneys, Phillips & Associates, Attorneys at Law, PLLC, upon information and belief, complains of the Defendant as follows:

## INTRODUCTION

1. Plaintiff complains pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §2000e *et. Seq.* ("Title VII"), the New York State Executive Law, and the Administrative Code of the City of New York, seeking damages to redress the injuries Plaintiff has suffered as a result of being harassed and discriminated against by the Defendant on the basis of her sex/gender, together with sexual harassment, creating a hostile work environment, retaliation, and constructive discharge.

## JURISDICTION AND VENUE

2. The Court has jurisdiction pursuant to 28 U.S.C. §1332 in that there is complete diversity of citizenship and the matter in controversy exceeds, exclusive of interest and costs, the sum of $75,000.

3. The Court also has jurisdiction under 28 U.S.C. §1331 and §1343 and supplemental jurisdiction under 28 U.S.C. §1367.

4. This action involves a Question of Federal Law.

5. Venue is proper in this district based upon the fact that a substantial part of the events and omissions giving rise to the claim occurred within the Southern District of New York. 28 U.S.C. §1391(b).

6. On or about September 13, 2017, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").

7. On or about May 26, 2018, Plaintiff received her Notice of Right to Sue letter from the EEOC.

8. This action is bring brought within ninety (90) days of said Notice of Right to Sue letter.

## PARTIES

2. Plaintiff is a female resident of the State of New York, County of Bronx.

3. At all times material, Defendant CDL (NEW YORK) L.L.C., individually and d/b/a "MILLENNIUM BROADWAY HOTEL," (hereinafter also referred to as "MILLENNIUM BROADWAY") was and is a foreign limited liability company, duly existing under the laws of the State of Delaware.

4. At all times material, Defendant MILLENNIUM BROADWAY was and is a foreign limited liability company duly authorized to conduct business under the laws of the State of New York.

5. At all times material, Defendant MILLENNIUM BROADWAY was and is a foreign limited liability company which does do business under the laws of the State of New York.

6. Defendant MILLENNIUM BROADWAY operates a luxury hotel located at 145 W 44th St, New York, NY 10036.

7. At all times material, Plaintiff was an employee of Defendant MILLENNIUM BROADWAY.

## MATERIAL FACTS

8. On or about June 20, 2016, Plaintiff began working for Defendant MILLENNIUM BROADWAY as a "Housekeeping Manager" at its 145 W 44th St, New York, NY 10036 location. Plaintiff's primary duties involved assigning rooms to housekeepers, assigning projects to housemen, inspecting rooms, and processing housekeeping inventory.
9. Beginning with Plaintiff's first day of work, and on a near-daily basis, Plaintiff was subjected to workplace harassment on the basis of her sex and gender.
10. For example, on or about October 8, 2016, in a conversation Plaintiff recorded, Plaintiff's female co-workers began to discuss fellatio in the workplace. At first, Plaintiff tried to ignore the sexually inappropriate conversation, but it continued.
11. Specifically, Defendant's "Office Coordinator," Jessica Santiago, stated, "**Deep-throating is when you get [the penis] all the way down**." Another "Office Coordinator," Jolene Frazier, asked, "**So have you seen a dick go all the way down there**?" Plaintiff became uncomfortable and she protested, "Guys, this is not a conversation for the office." Ms. Frazier continued, stating, **"We talking about … we talking about deep throat, right? We saying that the deep throat go down all the way to there…is that possible**?" Ms. Santiago then asked Plaintiff, "**Have you ever seen somebody deep-throat**?" Plaintiff again protested, "Listen, this is not a conversation for the office. I can hear you." The women laughed and told Plaintiff, "**You're not a virgin. This, this is the queen of deep-throating**."

12. Plaintiff again protested, "**This is…we're in the office, this is business hours and you guys are, you have your phones out, you guys**." Ms. Santiago merely replied, "**As union employees we have 15 minutes, this is 15 minutes**." Ms. Frazier then told Plaintiff, "**I don't know where you thought, Chrissy (Plaintiff), you thought you were signing up to work, but I really think you need to reconsider**." Soon thereafter, the harassment escalated.

13. On or about October 22, 2016, while she was leaving the women's bathroom, Plaintiff saw her co-workers, Juan (last name currently unknown), Alex (last name currently unknown), and Milton Plummer. Plaintiff greeted them and walked toward the elevator. Alex asked Plaintiff, "Are you my manager for the day?" Plaintiff replied, "I'm not sure yet. I didn't get the breakdown of the house yet." Juan leered at Plaintiff and asked Alex, "Do you *want* her to be your manager?" Alex replied, "[Plaintiff] is good, she's mad cool." **Juan replied, "I know,"** **and then reached over toward Plaintiff's body and groped the side of her stomach.** Plaintiff feared for her safety and complained, "Do not touch me like that." Juan merely replied, "Why you mad, don't take it out on me."

14. Shortly thereafter, Plaintiff complained to Defendant MILLENNIUM BROADWAY's "Senior Manager," Rhonda Rondon, about Juan's assault. Plaintiff stated, "Juan grabbed the side of my stomach, and I'm very uncomfortable and upset by this. I was cornered by these three men." Ms. Rondon replied, "I will let Vanessa [Williams] and Nick [Santana] know."

15. Later that same day, Plaintiff directly complained to Defendant's "Director of Housekeeping," Vanessa Williams, and Defendant's "Assistant of Housekeeping, Nicholas Santana, about the sexual harassment and assault. In an email, Plaintiff wrote,

> "This morning, after we came up from the morning meeting, I went to the ladies bathroom on the 9th floor. When I came out Alex, [Juan] … and

> Milton were standing by where the engineering guys sit. As I came around that corner I said Good Morning and wished them a good day. Alex tells [Juan] 'she's good she's mad cool' and [Juan] says 'I know' reaches over and grabs the side of my stomach. He like pinched/grabbed the side of my stomach. I told him immediately 'DO NOT TOUCH ME LIKE THAT' and walked away. As I was walking away he said something like 'oooh why you mad, don't take it out on me.' I didn't say anything I just went into the office. I told Rhonda [Rondon], and she said she would let you guys know. And I trust that she will, but it's really bothering me and **I feel violated**. I don't play with the guys so I'm not sure what gave him the confidence to do that. **It really bothers me that anyone in my work place would be confident enough to touch me in that manner**. I do not know what the solution is, but I don't feel comfortable around him. I couldn't even look him in the eye after that. Not cool at all." (emphasis added).

Ms. Williams replied that she would forward Plaintiff's complaint to Human Resources ("HR"). At the time, Plaintiff believed that Defendant's HR Department would address her complaint and prevent further harassment.

16. On or about October 25, 2016, Plaintiff met with Defendant's "Director of HR," Casey Ravines, to discuss the outcome of Defendant's investigation. Mr. Ravines told Plaintiff that Juan, Alex and Mr. Plummer denied Plaintiff's allegations. Mr. Ravines also stated, "Well, it wasn't on camera either, so there isn't much we can do." Plaintiff complained, "I am insulted that an incident has to be on camera in order for [Defendant] to take action. I feel unsafe in this building knowing that these men can corner me and sexually harass me in places with no cameras, and then just get to deny that it happened because it wasn't on camera." Mr. Ravines replied, "I understand. We will continue the investigation. Would you be willing to switch your shift?" Plaintiff reluctantly agreed, hoping that she would be separated from her harassers.

17. Later that same day, Plaintiff returned to the "Housekeeping" office. **While Plaintiff was working, another employee, Nash (last name currently unknown) reached over to**

**Plaintiff, grabbed Plaintiff's face as if he was going to kiss her on the lips, and then pushed her face to the side**. Nash then stated, "Oh, I thought you were [Ms. Santiago]. Plaintiff was humiliated and began to cry.

18. After Nash left Plaintiff's office, Plaintiff walked into Ms. Williams' office and complained, "That man just grabbed my face forcefully. I can't work like this. I need to make a complaint about this to HR."

19. Later that same day, Plaintiff met with Mr. Ravines and Ms. Williams to complain about experiencing further sexual harassment and assault. Ms. Williams acknowledged the incident by stating, "I saw Nash grab your face but I thought you knew him and you two were cool like that." Mr. Ravines then said, "I'm sorry that another incident happened in such a short time." Mr. Ravines and Ms. Williams again assured Plaintiff that they would address her complaints and remedy the harassment. Plaintiff then left for a pre-planned trip until October 31, 2016.

20. On or about October 31, 2016, prior to the beginning of her shift, Plaintiff went to HR to inquire about any measures to ensure that she would not be harassed at work. An "HR Manager," Erica Rodriguez, stated, **"We don't have a solution. [Mr. Ravines] is on vacation."** Plaintiff again complained, "I don't feel safe in the building because we still haven't reached a solution." Ms. Rodriguez replied, "I will let Ms. Williams know." Based on the fact that she was scheduled to work the same shift as her harassers, Plaintiff did not feel safe from sexual harassment and went home. Nevertheless, Defendant failed to remedy the harassment and/or prevent future harassment, Plaintiff's work schedule remained unchanged, and she had to work with her harassers.

21. In or around the beginning of November 2016, while Plaintiff was working in the office, Ms. Santiago asked, "Why did you take Juan to HR? What did he do?" Plaintiff was humiliated and embarrassed by the fact that her complaint was "public knowledge" at work.

22. On or about November 4, 2016, Plaintiff attended another HR meeting with Ms. Rodriguez to complain about the harassment and retaliation for her complaints. Plaintiff stated, "I feel like I'm being punished for speaking up about sexual harassment. I feel marked in the building because the office coordinators are asking why I took Juan to HR. I am traumatized by these two incidents. I love my job and for something like this to happen in a place I love coming into, it's a lot emotionally for me and I'm scared to work in the building while [Juan] and [Nash] are here." Plaintiff also requested a transfer to another location. Ms. Rodriguez asked, "Would you be interested in transferring to our Los Angeles office?" Plaintiff replied, "I'm open to moving. I want to be out of this building."

23. That same day, Plaintiff also sent a written complaint to Defendant's "General Manager," Joseph Turano. Although Mr. Turano stated that he would address Plaintiff's complaints. **Nevertheless, Plaintiff continued to be scheduled for shifts with her harassers.**

24. Later that same day, Ms. Rodriguez contacted Plaintiff regarding Plaintiff's request for a transfer. In an email, Ms. Rodriguez wrote,

> "Thank you for coming in to speak with me today. We are still investigating the second incident that happened with [Nash]. [Mr. Ravines] will be back next week and I will follow up with him. Please see us on Tuesday so that we can update you. If at any time you need to talk to anyone you can come to me or [Mr. Ravines] and please don't hesitate to use the help hotline number. Also, we had talked about possibly getting you to go to LA, I know you have applied for the position already. Please take this weekend to really think about this and when you come in on Tuesday we can discuss this further. As another option we can look into another one of our hotels in NY to see if they have any openings."

25. The next day, Plaintiff called out from her scheduled shift. Plaintiff then sent an email to Ms. Williams, Mr. Santana and Ms. Rondo, stating, "I am sorry, but I am terrified to go in today. I just keep replaying what happened, and to face everybody this morning its (sic) too much for me. I was waiting for the bus to head downtown, but I've decided to turn back. I cannot work in fear. It is much easier on me to work the evening. I asked Jo to switch with me on Sunday and she agreed. And I will be in earlier than my schedule shift on Tuesday to meet with HR again."

26. As a result of Defendant's failure to address her complaints, Plaintiff was forced to ask her co-workers to switch shifts with her so she would not work with her harassers.

27. On or about November 8, 2016, Plaintiff attended another HR meeting with Mr. Ravines to discuss the outcome of Defendant's investigation. Mr. Ravines stated, "[Nash] was written up and he received a final warning. We told him to stay away from you. I also spoke to the union and we cannot remove [Juan] or change his schedule. We will have to change your schedule around his. I will speak with Ms. Williams to possibly switch you to the night shift." Plaintiff replied, "I never signed up to be working night shifts." Defendant changed Plaintiff's schedule to less favorable hours, while her harassers maintained their original schedules.

28. Defendant gave Plaintiff a less favorable shift with the intent to constructively discharge her and in retaliation for her complaints.

29. Defendant refused to transfer Plaintiff in order to constructively discharge her and in retaliation for her complaints.

30. During the meeting, Plaintiff also complained, "Several people came up to me to tell me about his inappropriate behavior. Has [Juan] ever been accused of sexual harassment before?

Mr. Ravines replied, "I'm not sure." Plaintiff said, "This should be a part of the investigation. I cannot concentrate or think of anything but what has happened. Unless I am in camera view I do not feel safe in the building. I feel marked, and like my complaints are being brushed under the table." Plaintiff realized that Defendant would not perform a serious investigation into her complaints, and would not remedy the harassment or prevent future harassment.

31. Defendant failed to follow up with Plaintiff regarding her request for a transfer. As a result, Plaintiff was forced to protect herself by working only in areas with camera surveillance.

32. On or about December 13, 2016, in further retaliation for her complaints, one of Defendant MILLENNIUM BROADWAY's "Managers" gave Plaintiff a write-up for "attendance." In the write-up memo, the employee wrote,

> "As part of a recent audit of attendance in Housekeeping, it was determined that as of 12/13/16 [Plaintiff] has called out sick a total of 13 times since her employment in June 2016. The sick days used are as follows: 7/28/16/ 8/05/16, 9/24/16, 10/01/16, 11/02/16, 11/8/16, 11/12/16, 11/15/16, 11/26/16, 11/27/16 and 12/13/16. This is an excessive amount of sick calls during this time frame." Plaintiff complained, "The majority of days absent occurred after 2 incidents that I consider to be traumatizing and no solution created which forces a hostile environment and I wonder if that was ever considered."

Nevertheless, Defendant failed to address Plaintiff's complaints of harassment and retaliation.

33. On or about February 4, 2017, an employee of Defendant, Fernando Pegerro, walked in front of Plaintiff's desk and leaned in toward Plaintiff. **Mr. Pegerro then inserted a straw between Plaintiff's breasts, and performed a stroking motion in and out of Plaintiff's cleavage.** Mr. Pegerro said, "I thought you were [Ms. Santiago]," then laughed and walked away.

34. That same day, Plaintiff complained to Mr. Santana about experiencing a *third* incident of sexual harassment and assault while working for Defendant. Mr. Santana simply replied, "I will bring this to HR."

35. On or about February 10, 2017, Mr. Ravines sent Plaintiff an email stating, "Will you be available to come to the Human Resources office for a meeting this Monday (2/13/17) to discuss an incident you reported to [Mr. Santana] on 2/4/17?" Plaintiff informed Mr. Ravines that she would be out of the office, and she would follow up at the end of the week.

36. On or about February 16, 2017, after multiple complaints to her supervisors and HR Representatives, Plaintiff resigned from her position with Defendant. In her resignation email, Plaintiff wrote,

> "No solution has been created to make me feel safe in the work place, nothing has been confidential, and the staff hasn't even been given a refresher on what 'inappropriate touching' is or what a 'hostile work environment' is or even what is considered sexual harassment. I have been on vacation for the past few days and I realized that for my own mental health and well-being, I cannot return to the sexually harassing and unsafe conditions in the building. Consider this my resignation from the company."

37. Defendant's actions were intended to, and did, create a hostile work environment that no reasonable person would tolerate.

38. Defendant's actions were intended to constructively terminate Plaintiff.

39. Defendant's actions did constructively terminate Plaintiff.

40. Defendant would not have harassed or discriminated against Plaintiff but for her sex/gender.

41. Defendant would not have retaliated against Plaintiff but for her sex/gender.

42. Defendant would not have constructively discharged Plaintiff but for her complaints of sexual harassment and assault in the workplace.

43. As a result of Defendant's actions, Plaintiff felt, and continues to feel, extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

44. As a result of Defendant's discriminatory and intolerable treatment of Plaintiff, she suffered, and continues to suffer, severe emotional distress and physical ailments.

45. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer, the loss of income, the loss of a salary, bonuses, benefits and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

46. As Defendant's conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages as against Defendant.

**AS A FIRST CAUSE OF ACTION**
**UNDER TITLE VII**
**DISCRIMINATION**

47. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

48. This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e et Seq., as amended, for relief based upon the unlawful employment practices of the above-named Defendant. Plaintiff complains of Defendant's violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's sex/gender, together with sexual harassment, creating a hostile work environment, and constructive discharge.

**AS A SECOND CAUSE OF ACTION**
**UNDER TITLE VII**
**RETALIATION**

49. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

50. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-2(a) provides that it shall be an unlawful employment practice for an employer:

> "(1) to … discriminate against any of his employees … because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

51. Defendant engaged in an unlawful employment practice prohibited by 42 U.S.C. §2000e et Seq. by discriminating against Plaintiff with respect to the terms, conditions, or privileges of employment because of her opposition to the unlawful employment practices of Defendant, including, but not limited to constructively discharging Plaintiff's employment.

**AS A THIRD CAUSE OF ACTION**
**UNDER STATE LAW**
**DISCRIMINATION**

52. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

53. Executive Law §296 provides, "It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's actual or perceived… sex … to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

54. Defendant engaged in an unlawful discriminatory practice by discriminating against Plaintiff because of her sex, together with sexual harassment, creating a hostile work environment, retaliation, and constructive discharge.

55. Plaintiff hereby makes a claim against Defendant under all of the applicable paragraphs of Executive Law §296.

**AS A FOURTH CAUSE OF ACTION**
**UNDER STATE LAW**
**RETALIATION**

56. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

57. New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice:

> "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he has opposed any practices forbidden under this article."

58. Defendant engaged in an unlawful discriminatory practice by discharging, retaliating, and otherwise discriminating against the Plaintiff because of Plaintiff's opposition to her employer's unlawful employment practices.

**AS A FIFTH CAUSE OF ACTION**
**UNDER THE NEW YORK CITY ADMINISTRATIVE CODE**
**DISCRIMINATION**

59. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

60. The Administrative Code of City of New York, Title 8, §8-107 [1] provides that "It shall be an unlawful discriminatory practice: (a) For an employer or an employee of agent thereof, because of the actual or perceived … gender… of any person, to refuse to hire or employ or

to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

61. Defendant engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(1)(a) by creating and maintaining discriminatory working conditions, and otherwise discriminating against the Plaintiff on the basis of her gender, together with sexual harassment, creating a hostile work environment, retaliation and constructive discharge.

**AS A SIXTH CAUSE OF ACTION**
**UNDER THE NEW YORK CITY ADMINISTRATIVE CODE**
**RETALIATION**

62. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

63. The New York City Administrative Code Title 8-107(7) provides that:

> "It shall be an unlawful discriminatory practice for any person engaged in any activity to which this chapter applies to retaliate or discriminate in any manner against any person because such person has (i) opposed any practice forbidden under this chapter, (ii) filed a complaint, testified or assisted in any proceeding under this chapter, (iii) commenced a civil action alleging the commission of an act which would be an unlawful discriminatory practice under this chapter…"

64. Defendant engaged in an unlawful discriminatory practice by retaliating, and otherwise discriminating against Plaintiff because she opposed Defendant's unlawful employment actions.

**WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendant:

A. Declaring that the Defendant engaged in unlawful discriminatory practices prohibited by the New York State Executive Law and the New York City Administrative Code, and that the Defendant harassed and discriminated against Plaintiff on the basis of her sex/gender,

together with sexual harassment, creating a hostile work environment, retaliation, and constructive discharge;

B. Awarding damages to the Plaintiff for any lost wages and benefits, past and future, back pay and front pay, resulting from Defendant's unlawful employment practice;

C. Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to reputation in an amount in excess of the jurisdiction of all lower courts;

D. Awarding Plaintiff punitive damages;

E. Awarding Plaintiff attorney's fees, costs, and expenses incurred in the prosecution of the action;

F. Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendant's unlawful employment practices.

**JURY DEMAND**

Plaintiff requests a jury trial on all issues to be tried.

**WHEREFORE,** Plaintiff demands judgment against Defendant, jointly and severally, in an amount to be determined at the time of trial plus interest, punitive damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

Dated: New York, New York
June 22, 2018

By: ______________________

**PHILLIPS & ASSOCIATES, PLLC**
*Attorneys for Plaintiff*
Silvia C. Stanciu, Esq.
45 Broadway, Suite 620
New York, New York 10006
212-248-7431